## A09A2318. GASTON v. THE STATE.
(693 SE2d 841)

DOYLE, Judge.

Following a bench trial, Anthony Gaston was convicted of aggravated stalking,[1] burglary,[2] kidnapping,[3] and criminal trespass.[4]

---

[1] OCGA § 16-5-91 (a).

[2] OCGA § 16-7-1 (a).

[3] OCGA § 16-5-40 (a).

[4] OCGA § 16-7-21 (a).

He filed a motion for new trial, which the trial court initially granted. Then, following the State's motion for reconsideration, the trial court vacated its order granting the motion for new trial. Gaston appeals, arguing that the trial court erred by: (1) denying his demurrer as to Count 1 (aggravated stalking); and (2) conducting a trial without getting Gaston's waiver of his right to testify on the record. Gaston also contends that the trial court abused its discretion in considering documents submitted by the State after the motion for new trial hearing without giving Gaston the opportunity to challenge such evidence. We vacate and remand, for reasons that follow.

Construed in favor of the verdict,[5] the evidence shows that Gaston married Gina Tobey on September 24, 2005.[6] Tobey obtained a temporary protective order against Gaston on June 20, 2006, because his behavior had "become so erratic [she] just didn't feel safe. . . . He would be so angry at times, and [she] just didn't know what he was going to do, and [she] didn't feel safe."[7] On June 26, 2006, Gaston waited in the bushes outside Tobey's home, and when she came outside to warm up her car, he chased her to the house and kicked in the door. He then followed her into the house, grabbed her arm, led her outside, and put her into the car. Tobey jumped out of the car three times, and each time Gaston put her back in the car, at one point climbing over her car to get to Tobey, before driving away with her in the passenger seat. A neighbor who observed the incident called 911, and the police apprehended Gaston shortly after he left the neighborhood.

Gaston was charged with aggravated stalking, burglary, kidnapping, and criminal trespass, and the trial court found him guilty on all counts following a bench trial. After the trial, Gaston filed a motion for new trial, which the trial court granted. The State thereafter filed a motion for reconsideration, submitting two documents in support thereof. The trial court then vacated the order granting the motion for new trial. This appeal followed.

1. Gaston alleges that the trial court erred in denying his pretrial demurrer as to Count 1, aggravated stalking, because the indictment failed to specify the exact order that he allegedly violated.

When an appellate court conducts a post-trial review of the merits of a special demurrer

> where no prejudice to [the] defendant has occurred though
> the indictment or accusation or citation is not perfect,

---

[5] See *Croft v. State*, 278 Ga. App. 107 (628 SE2d 144) (2006).

[6] Gaston and Tobey were divorced on August 25, 2006, shortly before the October 2006 trial.

[7] The temporary protective order enjoined and restrained Gaston from contacting Tobey.

reversal is a mere windfall to [the] defendant and contributes nothing to the administration of justice. The true test of the sufficiency of an indictment or accusation or citation is not whether it could have been made more definite and certain or, for that matter, perfect, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. *Upon a proceeding after verdict, no prejudice being shown, it is enough that necessary facts appear in any form, or by fair construction can be found within the terms of the indictment* or accusation or citation. Thus, a defendant who was not misled to his prejudice by any imperfection in the indictment or accusation or citation cannot obtain reversal of his conviction on that ground.[8]

OCGA § 16-5-91 (a) provides:

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace . . . , temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Count 1 of the indictment alleged that on June 26, 2006, Gaston "did unlawfully contact Gina [Tobey] Gaston, without [her] consent . . . , for the purpose of harassing and intimidating [her], in violation of a court order, which prohibited such behavior by [the] accused."

Thus, the indictment closely tracked the language of the aggravated stalking statute and clearly informed Gaston that he was

---

[8] (Punctuation omitted; emphasis in original.) *Franklin v. State*, 243 Ga. App. 440, 441 (533 SE2d 455) (2000).

charged with inappropriately affirmatively contacting the victim in violation of a prior order,[9] which is sufficient.[10]

2. Gaston further argues that the trial court erred in failing to get his waiver of his right to testify in his own defense on the record. Again, we find no basis for reversal.

Trial counsel testified at the hearing on the motion for new trial that she fully explained Gaston's rights regarding testifying at trial, and that she was "positive that he understood that he had a right to testify and that he chose not to testify." Thus, Gaston was aware of his rights prior to making his decision not to testify.[11]

We reiterate that

> [w]hile a review of the authorities does not persuade us that we should mandate the trial court to engage in an on-the-record colloquy with a defendant to inquire of the non-testifying defendant whether he desires to waive his right to testify, we acknowledge that the better practice would be for the trial court to include this inquiry as a matter of routine in order to avoid a post-conviction attack of the nature raised in this appeal. Thus, while it would have been preferable for the trial court to make a record of [Gaston] being advised of his right to testify, it was not reversible error to fail to do so.[12]

3. Finally, Gaston alleges that the trial court erred in considering the evidence provided by the State in support of its motion for reconsideration without giving him the opportunity to respond before vacating its order granting Gaston's motion for new trial. We agree.

At the June 9, 2009, hearing on the motion for new trial, in addition to presenting argument in support of his claims regarding the demurrer and waiver of his rights to a jury trial and to testify, Gaston also argued that the trial court should grant him a new trial because "the punishment just so outstrips the facts of the crime that

---

[9] We note that there was only one court order issued against Gaston that enjoined him from contacting Tobey.

[10] See *South v. State*, 268 Ga. App. 110, 111-112 (2) (601 SE2d 378) (2004) (no error in denying special demurrer on the basis that the indictment failed to specify the exact way in which the acts of aggravated stalking occurred where the indictment charged that the defendant unlawfully contacted the victim, without her consent, "for the purpose of harassing and intimidating said [victim], *in violation of a court order, which prohibited such behavior by accused*") (emphasis supplied).

[11] Gaston does not allege that he was not informed of his rights regarding testifying, nor does he contest the State's assertion that he waived those rights.

[12] (Citation and punctuation omitted.) *Backey v. State*, 234 Ga. App. 265, 267 (5) (506 SE2d 435) (1998).

justice has not been served in the case."[13] Gaston's attorney stated at the hearing that "there is a point prior to the trial beginning where [the trial court] asked . . . what . . . the victim wanted, and she had not specified that she wanted a lot of time. She wasn't sure. She wanted him punished, but not necessarily maximum punishment." At the conclusion of the hearing, the trial court verbally granted the motion for new trial. When the State asked the basis for the ruling, the trial court explained, "Just because I think in the interest of justice, and I'm just so sick of what's going on around here. The lack of any mercy, any judgment. When the victim of this event says that it is too — too harsh and I just — we will just see."

On June 16, 2009, the State filed a motion for reconsideration, arguing, inter alia, that

> [a]t the hearing, the [c]ourt appeared to be persuaded by defense counsel's representation that the victim, Ms. Tobey, did not agree with the Court's sentence given to the defendant. This information was incorrect. As evidenced by the attached affidavit and victim impact statement[,] Ms. Tobey is traumatized at the prospect of Defendant's release from incarceration. . . . Ms. Tobey would like to address the [c]ourt and inform it of the numerous attempts — post-conviction — the Defendant has made to continue to harass, threaten[,] and intimidate her — scoffing at the [c]ourt's authority, making statements such as "F—k the judge." After Defendant's conviction, Ms. Tobey underwent domestic violence counseling for over a year, and is now frightened at the prospect of Defendant's release from incarceration.

The State included two exhibits to the motion for reconsideration: (1) a notarized letter from Tobey detailing Gaston's attempts to contact her after the trial, stating that Gaston is "not going to stop [contacting her] . . . he never will";[14] and (2) an unsigned (though presumably written by Tobey), handwritten statement to the parole board detailing physical and sexual abuse by Gaston and indicating that the writer was frightened of him.[15]

The following day, the trial court entered an order vacating the grant of a new trial. Several days later, Gaston filed a motion to set

---

[13] The trial court initially verbally sentenced Gaston to ten years on all counts, but after the State advised that Gaston should be sentenced as a recidivist, the trial court sentenced him to twenty years, to serve ten in prison with the balance suspended.

[14] As part of his sentence, Gaston was prohibited from any further contact with Tobey.

[15] The motion included a certificate of service indicating that a copy thereof was sent to Gaston's attorney by regular mail.

aside the June 17, 2009 order, which the trial court denied.

During the term in which a judgment is entered, a trial court has plenary control over it and has the discretion to set aside the judgment for irregularity, or because it was improvidently or inadvertently entered and for the purpose of promoting justice. A trial court's discretion in setting aside a judgment will not be disturbed unless manifestly abused. However, a trial court's discretion to set aside a judgment during the term it was entered is not without limits, and should be exercised for some meritorious reason. In this regard, a trial court is granted the discretion to determine what is a meritorious reason for setting aside one of its judgments, and an appellate court may reverse that discretion only if it is manifestly abused.[16]

Thus, the trial court had discretion to set aside its order for any meritorious reason. However, the trial court erred to the extent that it based its ruling on consideration of the exhibits attached to the State's motion because Gaston did not have the opportunity to confront and challenge Tobey's statements.[17] Thus, we vacate the trial court's order vacating the grant of a new trial and remand this case to the trial court for proceedings consistent with this opinion.

*Judgment vacated and case remanded. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 16, 2010 —
RECONSIDERATION DENIED APRIL 7, 2010.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.

---

[16] (Punctuation and footnotes omitted.) *Pope v. Pope*, 277 Ga. 333, 334 (588 SE2d 736) (2003).

[17] See, e.g., *Miller v. State*, 266 Ga. 850, 856 (7) (472 SE2d 74) (1996) (" 'Affidavits of absent witnesses cannot be admitted in evidence at criminal trials because doing so violates the right of defendants to confront witnesses against them.' "); *Roylston v. Conway*, 251 Ga. App. 648, 651-652 (1) (555 SE2d 28) (2001) ("When facts not properly in evidence are considered, the other party's rights cannot be protected fully since the privilege of cross-examination is denied. Effective cross-examination is a substantial right, essential to the proper administration of justice, and extends to all matters that are material to the controversy and are within the knowledge of the witness.") (citation and punctuation omitted).